BELL v SEABURY

Docket No. 209692. Submitted May 9, 2000, at Marquette. Decided December 1, 2000, at 9:00 A.M. Leave to appeal sought.

Dennis L. Bell, doing business as Bell Enterprises, brought an action in the Marquette Circuit Court against James Seabury, Prudential Insurance Company of America, and others. Bell, an agent with Prudential, alleged interference with his customers and the breach of certain contractual obligations allegedly owed to him. Bell's employment agreement with Prudential contained an agreement to arbitrate any disputes with Prudential pursuant to the provisions of the Federal Arbitration Act (FAA), 9 USC 1 et seq. Because Bell was still employed by Prudential, the parties, at the court's suggestion, agreed to try nonbinding mediation as a vehicle to settle their differences. Natalie Gaull, an in-house attorney with Prudential, and Gordon Busdicker, a member of a law firm that represented Prudential, acted as "neutral" mediators. When the mediation process failed to result in a settlement, the court, Edward A. Quinnell, J., ordered the matter to arbitration before an arbitration panel provided by the National Association of Securities Dealers, Inc. At the arbitration hearings, Prudential was represented by Mr. Busdicker. Although the plaintiff did not initially object to Mr. Busdicker's representation, the plaintiff ultimately moved before the arbitration panel to disqualify Mr. Busdicker on the ground that Busdicker had acted as a neutral mediator and had thus gained an unfair advantage and had learned confidential information. The arbitration panel denied the motion to disqualify, but did authorize the plaintiff to conduct discovery. The arbitration panel ultimately entered an award in which it rejected and dismissed all of the plaintiff's claims. The plaintiff moved in the circuit court to vacate the arbitral award on the basis that Mr. Busdicker's involvement as both a mediator and as counsel for Prudential in the arbitration constituted unethical behavior and thereby rendered the arbitral award voidable and unenforceable. Although the court found that the plaintiff had failed to establish any nexus between Busdicker's alleged misconduct and the decision of the arbitrators as was required to set aside an award under the provisions of the FAA, the court went on to say that the public policy considerations of maintaining confidence in the alternative resolution process required

that the award be vacated. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. Form U-4 agreements to arbitrate, such as the one signed by the plaintiff, involve commerce and, therefore, are governed by the FAA. The FAA supersedes any inconsistent state law doctrines. The court properly concluded that the plaintiff did not establish a nexus between the alleged misconduct of counsel and the award of the arbitrators, as is required to establish that the award was procured by undue means within the meaning of 9 USC 10(1), the only possible ground under the FAA for setting aside the award in this matter. Having found that the alleged misconduct had no effect on the decision of the arbitrators, the court erred in vacating the arbitral award. Accordingly, the arbitral award must be reinstated.

2. Because there was no causal relationship between counsel's alleged misconduct and the arbitral award, it is unnecessary to decide the issue of the appropriate remedy for counsel's alleged misconduct.

Reversed.

ARBITRATION — FEDERAL ARBITRATION ACT — VACATION OF AWARD.

An arbitration award entered pursuant to the provisions of the Federal Arbitration Act may be vacated only on those grounds set forth in that act (9 USC 1 *et seq.*).

*Mantese Miller and Mantese P.L.L.C.* (by *E. Powell Miller*), for the plaintiff.

*Ronald D. Keefe* (*Sonnenschein Nath & Rosenthal*, by *Michael A. Schlanger* and *Daniel D. Barnowski*, of Counsel), for the Prudential Insurance Company of America.

*Sommers, Schwartz, Silver & Schwartz* (by *Leonard B. Schwartz*), for James Seabury.

*Kerr, Russell & Weber* (by *William Sankbeil*), for Paul P. Caswell and Gary Robinson.

Before: HOOD, P.J., and SAAD and O'CONNELL, JJ.

SAAD, J.

## I. NATURE OF THE CASE

Defendants ask this Court to reverse the trial court's order that vacated National Association of Securities Dealers, Inc., arbitral award under the Federal Arbitration Act (FAA).[1] We reverse.

The trial court expressly held that plaintiff failed to prove the statutory grounds for vacating an arbitral award under the FAA, but the court nonetheless vacated the award, reasoning that the alleged improper conduct of defense counsel undermined public confidence in the dispute resolution system and that to confirm the award would similarly undermine the integrity of the court.

The implications and alleged effect of the alleged improper conduct of the outside counsel for defendant Prudential Insurance Company of America, Mr. Gordon Busdicker, on the arbitration proceedings will be explained in more detail below. The essence of plaintiff's complaint regarding Busdicker's unethical conduct is that after plaintiff's complaint was filed, the parties used voluntary mediation in an effort to settle their differences and Busdicker acted as a "neutral" mediator and, when mediation failed, he acted as counsel for defendants in the court-ordered arbitration. Plaintiff claims that he was harmed by this unethical or improper conduct of Busdicker and that he asked the arbitration panel to disqualify Busdicker as counsel. The arbitral panel refused to disqualify Busdicker, but granted discovery relief as a remedy. The trial court also heard plaintiff's claim that the arbitral award should be set aside under the FAA. In

---

[1] 9 USC 1 *et seq.*

response to plaintiff's assertion that the arbitral award should be set aside, the trial court found that (1) plaintiff had a full and fair hearing, (2) the arbitrators were impartial and knowledgeable, and (3) most importantly, "any impropriety in Mr. Busdicker's connection with any of the proceedings did not influence the award, let alone procure it" (as required by the FAA to set aside an arbitrator's award).

However, despite the fact that plaintiff was not damaged by the alleged attorney misconduct, the court set aside the arbitral award because the court believed that the attorney's conduct would damage the reputation of, and thus public confidence in, alternative dispute resolution systems and, therefore, for the court to confirm such an award would also undermine the integrity of the court. Accordingly, the trial court expressly ruled that "even though plaintiff cannot show any actual prejudice to his own presentation to the panel," the award should be set aside.

The trial court's ruling presents us with this issue of first impression: May a trial court vacate an arbitral award despite the court's express finding that there are no grounds under § 10 of the FAA, 9 USC 10, to vacate the award and despite the fact that there is no causal relationship between the misconduct and the arbitral award?

We hold that the court had no basis for vacating the award and that counsel's alleged impropriety is not sufficient grounds to overturn this arbitral award because the alleged misconduct had no effect on the arbitral award.[2]

---

[2] Though we need not address the issue, it is clear that a court may make a lawyer's unethical conduct the subject of disciplinary proceedings before the bar. See Michigan Code of Judicial Conduct, Canon 3(B)(3).

## II. FACTS AND PROCEDURE

Plaintiff was an agent for Prudential Insurance Company of America. As a condition of his employment with Prudential, plaintiff signed a Form U-4 agreement, which contained an agreement to arbitrate any disputes that arose between him and Prudential. The circuit court properly determined that the contract to arbitrate was enforceable and was governed by the terms of the FAA. Form U-4 arbitration agreements, such as plaintiff's, have long been held to be valid and governed by the provisions of the FAA.[3]

However, before ordering the matter to arbitration, the trial court suggested that the parties make an effort to settle their disputes voluntarily. In part, the trial court urged voluntary settlement of the circuit court litigation because plaintiff was still employed with Prudential, his disputes were with fellow agents from the office he previously worked in, and these agents, in turn, apparently had some grievances against plaintiff.

Accordingly, the parties agreed to attempt nonbinding mediation as a vehicle to settle their differences. Natalie Gaull, an in-house lawyer for Prudential, advised the individual defendants and plaintiff that she, along with an outside lawyer for Prudential, Mr. Busdicker, would agree to act as "neutral" mediators in an effort to resolve the parties' differences. During the mediation process, plaintiff was represented by counsel and plaintiff and his counsel were aware that the two "neutral" mediators were both Prudential lawyers, one in-house, the other outside. In any event,

---

[3] *Perry v Thomas*, 482 US 483; 107 S Ct 2520; 96 L Ed 2d 426 (1987).

mediation failed to reach a settlement, and the court ordered the parties to submit their disputes to a binding arbitration pursuant to the arbitration agreement and the FAA. During arbitration, Prudential used outside counsel, Mr. Busdicker, and the firm with which he was associated, to represent defendants before the arbitration panel.

Though plaintiff made no objection for almost a year to Busdicker's appearance in his capacity of counsel for the defendants, he ultimately moved before the arbitration panel to disqualify Busdicker on the ground that Busdicker had acted as a neutral mediator and thus had gained unfair advantage and learned confidential information that he could now use against plaintiff. The arbitral panel denied plaintiff's motion to disqualify counsel because it did not want to incur any delays. However, in an effort to provide plaintiff with some relief for what plaintiff and the panel regarded as the damage of having the same counsel act as a neutral mediator and then counsel for Prudential, the panel authorized plaintiff to conduct discovery for a full day—a procedure not normally allowed in arbitration and not granted to defendants in this case. Thereafter, there were thirty-six days of hearings before the arbitration panel and the arbitrators rendered a decision that rejected and dismissed all of plaintiff's claims against defendants and all of defendants' claims against plaintiff. Later, plaintiff moved to vacate the arbitral award in the circuit court on the theory that Mr. Busdicker's involvement as a mediator and then as counsel for Prudential in the arbitration was unethical and should therefore render the award voidable and unenforceable.

In response to plaintiff's motion to vacate the arbitral award, the circuit court found that the arbitration panel afforded plaintiff a full and fair opportunity to air all of his claims. Indeed, in its written opinion, the court stated, "In fact, at the conclusion of the arbitration hearings, plaintiff's counsel acknowledged that he had been accorded a full and complete hearing." The circuit court further stated that it was bound by subsections 10a(1), (2), (3), and (4) of the FAA, 9 USC 10(a)(1), (2), (3), and (4). The court further noted that the only possible ground for setting aside the arbitration award under the FAA was that found in subsection 10a(1), which provides that an award may be set aside where "the award was procured by corruption, fraud or *undue means*". 9 USC 10 (a)(1) (emphasis added). In this connection, the court specifically held that "plaintiff cannot establish the required nexus between Busdicker's alleged misconduct and the decision of the arbitrators." The court stated that neither Bell nor his attorneys specified what confidences and information were furnished to Busdicker during the mediation process; indeed, plaintiff admitted that he had not told Busdicker anything that he had not presented to the arbitration panel. Furthermore, any meetings with Busdicker during the mediation were held in the presence of defendant Prudential's in-house counsel, Ms. Gaull. The court further found that plaintiff and his lawyer at the mediation knew that Ms. Gaull was in-house counsel for Prudential and that Mr. Busdicker was an outside lawyer for Prudential, but proceeded with the mediation notwithstanding that knowledge. Most importantly, the court held as follows:

> In short, the arbitrators found against the plaintiff on the merits of his claims. He had a full hearing. And the arbitrators were both impartial and knowledgeable. *And most importantly, any impropriety in Mr. Busdicker's connection with any of the proceedings did not influence the award, let alone procure it.* [Emphasis added.]

While this conclusion would seem to have ended the inquiry and to have demanded a dismissal of plaintiff's motion to set aside the arbitral award, the court went on to say that there were policy considerations that compelled it to vacate the arbitral award. Basically, the court believed that public confidence in alternative dispute resolution systems would be undermined if the type of conduct engaged in by Mr. Busdicker were to be approved by the court. In this regard, the court stated:

> To expand somewhat on the policy considerations, it is clear beyond question that mediation, arbitration and other forms of alternative dispute resolution are to be encouraged, but they can function as a substitute for court proceedings only if the alternative dispute resolution processes carry with them the same assurances of impartiality and integrity which (ideally) accompany judicial proceedings. Impropriety in those processes can result in a lack of confidence on the part of litigants as to the efficacy of those proceedings. In this case, the participation of Gordon Busdicker in the mediation as an ostensible neutral, and his later appearance on behalf of one of the litigants, lends at least the appearance of an impropriety, and the subsequent arbitration award cannot stand even though plaintiff cannot show any actual prejudice to his own presentation to the panel.
>
> Further, by seeking to have the award confirmed, the defendants seek to have this Court put its imprimatur of approval on the award and the processes which led to the award. I decline to do so.

* * *

> On balance, the damage to the dispute resolution system and the integrity of the courts from confirming the award outweighs the benefit in having the dispute resolved.

Accordingly, the trial court vacated the arbitral award, and we now reverse the trial court's ruling.

### III. ANALYSIS

The United States Supreme Court has expressly determined that Form U-4 agreements to arbitrate, such as plaintiff's agreement, involve commerce and, therefore, are governed by the FAA. *Gilmore v Interstate/Johnson Laine Corp*, 500 US 20; 111 S Ct 1647; 114 L Ed 2d 26 (1991). Because the FAA supersedes any inconsistent state law doctrines pursuant to the Supremacy Clause, US Const, art VI, grounds for vacating the award must be found in the FAA. And, regarding the statutory grounds set forth in the FAA, the trial court properly found that plaintiff failed to prove any of the statutory bases for setting aside the arbitration award. Indeed, plaintiff virtually concedes that there is no causal relationship between the alleged misconduct of defendants' counsel and the award itself, and the court expressly found that there was no nexus between the misconduct and the award. Accordingly, the only basis plaintiff advanced for vacating the award is that counsel violated the ethical rules set forth in the Michigan Rules of Professional Conduct and, therefore, that counsel should have been disqualified. However, the flaw in plaintiff's theory is that counsel's misconduct had no effect on the arbitral award and, therefore, does not constitute a legitimate reason to vacate the arbitral award. This

is particularly true because arbitral awards are given great deference and courts have stated unequivocally that they should not be lightly set aside. *Dawahare v Spencer*, 210 F3d 666, 669-670 (CA 6, 2000).[4] Again, the trial court not only concluded that the attorney misconduct did not procure the arbitration, it found that the misconduct did not even have an effect on it. Also, in light of plaintiff's admission that he did not say anything to counsel that he did not present to the arbitrators, there is simply no causal relationship between the alleged misconduct and the arbitration to warrant vacating the arbitral award.

Accordingly, we reverse the trial court's order that vacated the arbitral award and reinstate the arbitral award.

In light of our holding that there is no causal relationship between counsel's misconduct and the arbitral award, we need not decide the issue of the appropriate remedy for the alleged lawyer's misconduct. However, we would note that if an attorney or judge observes conduct on the part of counsel that may be regarded as unethical, that attorney or judge may seek disciplinary proceedings through the Attorney Grievance Commission. Michigan Code of Judicial Conduct, Canon 3(B)(3). The record does not reveal if the trial court or counsel for the plaintiff took such action in this case. Further, we would note that counsel for plaintiff at the trial court level was aware that in-house and outside counsel for Prudential would be

---

[4] Courts play only a limited role in reviewing arbitrators' decisions and may vacate an award only under narrowly defined circumstances. *Dawahare, supra* at 669. In such circumstances, evidence of the impropriety or an erroneous legal ruling must be direct and definite or "must fly in the face of established legal precedent." *Id.*, quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc v Jaros*, 70 F3d 418, 421 (CA 6, 1995).

acting as "neutral" mediators. It strains credulity to believe that a sophisticated trial counsel would accept as reasonable the proposition that in-house and outside lawyers for the opposition would or could act as neutrals. It is also questionable that competent counsel would not suggest extreme caution to his client about sharing confidences with inside and outside counsel for the opposition in litigation. This may explain why in the motion to disqualify counsel at the arbitration and in the motion to set aside the arbitration at the circuit court level, plaintiff could not point to any confidences that were shared with Mr. Busdicker[5] that prejudiced plaintiff at the arbitration. Accordingly, this reinforces our conclusion that Mr. Busdicker's conduct of acting first as a neutral and then as an advocate, though questionable, had nothing to do with the arbitral award and thus supports our holding in which we reverse the trial court's vacatur order.[6]

---

[5] Defendant's affidavit denied being privy to any confidences.

[6] This Court has made clear that it will overturn an adjudication where trial counsel's misconduct denies a party a fair trial. *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999).