# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM BEAUMONT HOSPITAL,

        Plaintiff-Appellee,

v

WEST BLOOMFIELD MOB, LLC, and
WINFIRECO, LLC,

        Defendants-Appellants.

UNPUBLISHED
July 26, 2016

No. 327238
Oakland Circuit Court
LC No. 2014-140857-CK

Before: SHAPIRO, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this arbitration dispute involving a limited liability company and its members, defendants West Bloomfield MOB, LLC (WBMOB) and Winfireco, LLC (Winfireco) appeal as of the right the circuit court order which confirmed the arbitrator's award and entered judgement in favor of plaintiff William Beaumont Hospital (Beaumont). Because there is no error apparent on the face of the arbitrator's award and the circuit court did not err by confirming the award, we affirm.

WBMOB is a Michigan limited liability company formed in 2006. Its members are Beaumont and Winfireco. WBMOB's business operations consisted of the ownership of a medical building in West Bloomfield, which Beaumont occupied as a tenant. However, it appears that WBMOB lost the building to foreclosure sometime in 2012. In March of 2012, Beaumont filed a demand for arbitration and thereafter the parties advanced numerous competing claims relating to WBMOB, which were ultimately submitted to arbitration before an American Arbitration Association (AAA) arbitrator, resulting in an arbitration award in Beaumont's favor in the amount of $1,871,648.88. On September 26, 2014, the circuit court entered an order confirming the arbitration award and entering judgment in Beaumont's favor in the amount of $1,871,648.88. Defendants moved for reconsideration, which the circuit court denied. Defendants now appeal to this Court as of right.

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to vacate or enforce an arbitration award, meaning that we do not extend any deference to the trial court's determination. *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). Nonetheless, judicial review of an arbitration award is "extremely limited." *Fette v Peters Const Co*, 310

-1-

Mich App 535, 541; 871 NW2d 877 (2015). "A court may not review an arbitrator's factual findings or decision on the merits." *Id.* Likewise, "[c]ourts may not engage in contract interpretation, which is a question for the arbitrator." *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999). Instead, to warrant the vacation of an arbitration award, "error, if any, must be evident from the face of the award and 'so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise.'" *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991).

When reviewing an arbitrator's award, "an allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision." *Id.* For this reason, "a court may only decide whether the arbitrator's award 'draws its essence' from the contract." *Fette*, 310 Mich App at 541 (citation omitted). "If the arbitrator in granting the award did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the contract, judicial review effectively ceases." *Id.* (citation omitted). In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court may not overturn the decision even if convinced that the arbitrator committed a serious error." *Ann Arbor v Am Fedn of State, Co, & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009) (citation and quotation marks omitted).

## II. PUT OPTION AGREEMENT

On appeal, defendants first argue that the arbitrator acted outside his authority by deciding Beaumont's "put option" claims in addition to Beaumont's claims relating to the Operating Agreement because the arbitrator drew his authority from the arbitration clause in the Operating Agreement and the put option claims arose under a separate Put Option Agreement, which contained a distinct arbitration clause.

Relevant to this argument, by contract, the parties afforded Beaumont a put option, which refers to Beaumont's contractual right to demand that WBMOB buy back a portion of Beaumont's membership interest. This right was first created in the Operating Agreement, signed by the parties on August 22, 2006, which provided in pertinent part that "Beaumont shall also have the right to sell Units as described in the Put Option attached as Exhibit '2.7b.'" Beaumont and WBMOB then executed the Put Option Agreement on October 13, 2006 and, on that same date, Winfireco executed a document guaranteeing WBMOB's obligations under the Put Option Agreement. The Put Option Agreement set forth the details of the Put Option and how it should be exercised. Notably, both the Operating Agreement and the Put Option Agreement contained arbitration clauses. The Operating Agreement required arbitration as follows:

> **Disputes and Arbitration.** Any dispute under this Agreement shall be submitted to final, exclusive, and binding arbitration. The hearings shall be conducted in accordance with the expedited commercial arbitration rules of the [AAA] then in effect in Southfield, Michigan. Entry of judgment on such award may be made in any court of competent jurisdiction.

In comparison, the Put Option Agreement required arbitration as follows:

> Any controversy, claim, or interpretation of this Agreement shall be arbitrated by an attorney licensed in the State of Michigan selected by the Certified Public Accountant regularly servicing [WBMOB], his or her decision shall be binding on [WBMOB] and all Members and may be entered as a judgment in any court of competent jurisdiction.

Based on these two distinct arbitration clauses, defendants now argue that the AAA arbitrator's authority under the Operating Agreement—to decide Beaumont's claims relating to the Operating Agreement—did not extend to specific controversies or claims arising under the Put Option Agreement, which were instead subject to arbitration before an arbitrator selected by WBMOB's accountant. According to defendants, by deciding the put option issues, the arbitrator exceeded his authority such that defendants are entitled to have the arbitration award set aside. We disagree.

Under MCR 3.602(J)(2)(c), an arbitration award shall be set aside if "the arbitrator exceeded his or her powers." "Arbitrators exceed their power when they 'act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004). Notably, if an agreement dictates the method for appointing an arbitrator, that method must be honored. MCL 600.5015 ("If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed.")[1]; *Whitaker v Citizens Ins Co of Am*, 190 Mich App 436, 440; 476 NW2d 161 (1991).

In this case, Beaumont filed the initial demand for arbitration under the Operating Agreement, meaning that the arbitrator was selected in accordance with the AAA rules specified by the parties in the Operating Agreement.[2] There is no challenge with respect to the propriety of the arbitrator's selection under the Operating Agreement, and there is no question that *all* of the issues in this case—the put option claims and Beaumont's other claims—were, generally speaking, proper subjects for arbitration. In these circumstances, procedural questions relating to the arbitration, and subsequent questions of contract interpretation, were matters within the arbitrator's authority to resolve. See *Lauren Bienenstock & Assoc, Inc v Susan Lowry*, __ Mich

---

[1] MCL 600.5015, as part of the Michigan Arbitration Act, MCL 600.5001 *et seq.*, has been repealed and replaced with the Uniform Arbitration Act, MCL 691.1681 *et seq.* See 2012 PA 370; 2012 PA 371. However, the Michigan Arbitration Act continues to apply to demands for arbitration—such as the demand in this case—filed before July 1, 2013. See MCL 691.1713; *Fette*, 310 Mich App at 542.

[2] Given that the method of selection in the Operating Agreement was undisputedly followed, this is not a situation where the arbitrator was entirely without authority to act because the method for selecting the arbitrator was not followed. See generally *Crawford Group, Inc v Holekamp*, 543 F3d 971, 976 (CA 8 2008); *Bulko v Morgan Stanley DW Inc*, 450 F3d 622, 625 (CA 5 2006); *Cargill Rice, Inc v Empresa Nicaraguense Dealimentos Basicos*, 25 F3d 223, 226 (CA 4 1994).

App __, __; __ NW2d __ (2016) (Docket No. 323986), slip op at 4-6; *Cent W Virginia Energy, Inc v Bayer Cropscience LP*, 645 F3d 267, 272-274 n 3 (CA 4 2011); *Dockser v Schwartzberg*, 433 F3d 421, 426 (CA 4 2006); *Shaw's Supermarkets, Inc v United Food & Commercial Workers Union, Local 791, AFL-CIO*, 321 F3d 251, 254 (CA 1 2003). Indeed, defendants appear to concede on appeal that the arbitrator could analyze the contracts to decide whether, as a procedural matter, the put option claims must proceed separately before an arbitrator selected by WBMOB's accountant.

The fact that the arbitrator had authority to decide this issue is a critical point for purposes of our review because it means that the arbitrator's decision is entitled to considerable deference on appeal.[3] See *Bell v Seabury*, 243 Mich App 413, 422; 622 NW2d 347 (2000). When reviewing this decision on appeal, we cannot second-guess the merits of the arbitrator's decision or substitute our judgment for that of the arbitrator. See *Ann Arbor*, 284 Mich App at 144; *Fette*, 310 Mich App at 541; *Konal*, 235 Mich App at 74. That is, faced with a procedural, contract-related question at least arguably within its authority to decide, the arbitrator stated:

> In the present Arbitration, [Beaumont] has asserted claims that arise out of the Operating Agreement including a claim for money owed under the Put Option.
>
> ***
>
> The Put Option Arbitration clause only applies to controversy, claim or interpretation of the Put Option. The arbitration agreement contained in the Operating Agreement applies to any dispute under the Operating Agreement which includes disputes that are not included in the Put Option. Accordingly, the two (2) Arbitration Agreements do not cover the same subject matter and, therefore, the Put Option Arbitration Clause does not supersede the Arbitration Agreement contained in the Operating Agreement. The American Arbitration Association, consistent with [arbitration provision] of the Operating Agreement, does have jurisdiction over all disputes arising out of the Operating Agreement.

---

[3] Beaumont argues on appeal that defendants waived their claims that the arbitrator could not decide the put option issues. Contrary to this argument, defendants repeatedly objected to the arbitrator's consideration of the put option issues—in circuit court before arbitration, several times before the arbitrator, and again in circuit court after the arbitration. This is certainly not a case where defendants participated in arbitration "without objection" or adopted a "wait and see posture." See *Arrow Overall Supply Co v Peloquin Enterprises*, 414 Mich 95, 99-100; 323 NW2d 1 (1982). For this reason, we do not consider the issue waived. Nonetheless, our review of the arbitrator's award at this stage is very limited. Cf. *Oakland-Macomb Interceptor Drain Drainage Dist v Ric-Man Const, Inc*, 304 Mich App 46, 55-59; 850 NW2d 498 (2014) (engaging in de novo contract review *before* arbitration to enforce contractual arbitrator selection requirements, and specifically noting that, after arbitration, "it is very improbable that a court will offer relief").

These determinations by the arbitrator—that the Operating Agreement arbitration clause encompassed all the issues involved, including the put option (which was incorporated by reference in the Operating Agreement), and that the Put Option arbitration clause was not intended to supersede the Operating Agreement arbitration clause—constituted an arguable construal of the contracts at issue in light of the arguments raised by the parties at that time. Because the arbitrator was at least arguably construing the contracts and acting within his authority, this interpretation cannot be overturned on appeal. See *Ann Arbor*, 284 Mich App at 144.

Moreover, even assuming some error in the arbitrator's contract interpretation, it appears that, at most, the identity of the arbitrator would possibly have been different, but defendants have not addressed how, with a different arbitrator, the award would have been "substantially otherwise." *Gordon Sel-Way, Inc*, 438 Mich at 497. Defendants were afforded arbitration before a neutral arbitrator, and the arbitrator applied the AAA rules which, because the Put Option Agreement does not specify the use of other rules, applied to both the Operating Agreement and Put Option Agreement. In these circumstances, at this stage in the proceedings, even assuming a technical error in the selection of the arbitrator for purposes of deciding the put option claims, defendants have not shown the prejudice necessary to merit the vacation of an arbitration award. Cf. *J R Snyder Co, Inc v Soble*, 57 Mich App 485, 489; 226 NW2d 276 (1975).

## III. MEMBER DISTRIBUTIONS

On appeal, defendants also contend that the arbitrator's award to Beaumont on its put option and preferred return claims amounted to a member distribution in violation of the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*. In particular, defendants note that MCL 450.4307(1) precludes a limited liability company from making distributions to members if the distributions would leave the company insolvent. According to defendants, WBMOB's only asset consists of its claims against Beaumont, some of which the arbitrator resolved in defendants' favor. However, the arbitrator then entered a net award, subtracting sums owed by Beaumont to defendants from the amount owed by defendants to Beaumont. Defendants maintain that the end result is an improper member distribution to Beaumont which left WBMOB unable to pay its creditors, namely Winfire Management.

The flaw in defendants' argument is that we cannot perceive such errors from the face of the award and we may not, in the course of our review, make factual findings or engage in a review of the arbitrator's mental pathway leading to the award. *Fette*, 310 Mich App at 541; *Washington*, 283 Mich App at 672. Specifically, defendants' argument is premised on the assertion that the arbitrator's award to Beaumont will leave WBMOB insolvent and unable to pay creditors in violation of MCL 450.4307(1). But, on the face of the award, there is no indication that payment on Beaumont's put option and preferred return claims will necessarily leave WBMOB insolvent or unable to pay creditors. The only creditor that defendants identify is non-party Winfireco Management, but the arbitrator expressly stated that it would not rule on the management company's claims for lease commissions because the "claims appear moot." No other creditors are identified in the award (or by defendants on appeal), and thus there is simply no clear indication that the award in Beaumont's favor will improperly usurp the rights of any creditor. Likewise, it is not factually apparent from the face of the award whether the award will in fact leave WBMOB insolvent, particularly when the arbitrator stated that it was not ruling on

"the claim of liquidation of WBMOB." Moreover, as argued by Beaumont on appeal, it is possible that the arbitrator concluded that Beaumont became a creditor of WBMOB when it exercised its put option (which included a right to the preferred return at closing), such that Beaumont would be entitled to payment as a creditor under the Limited Liability Company Act on par with other unsecured creditors. See generally MCL 450.4304(1); MCL 450.4307(4) and (5). Quite simply, without parsing the arbitrator's mental pathway, which we cannot do, there is no basis to conclude that the arbitrator committed a substantial error. Consequently, the arbitrator's award must be affirmed, and the circuit court did not err by entering judgment in Beaumont's favor.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause